UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LAWRENCE P. ANTONINI & MARY B. ANTONINI | CIVIL ACTION |
| VERSUS | NO: 12-2386 |
| BLUE GATE FARM, LLC & DENISE C. WILSON | SECTION: "A" (5) |

**ORDER AND REASONS**

Before the Court is a **Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Dismiss for Improper Venue (Rec. Doc. 12)** filed by defendants Blue Gate Farm, LLC and Denise Wilson. Plaintiffs Lawrence and Mary Antonini oppose the motion. The motion, set for submission on December 5, 2012, is before the Court on the briefs without oral argument. For the reasons that follow the motion is GRANTED.

**I.   Background**

This matter arises out of the sale of Cavalier Z, a Zangersheide gelding, by defendant Blue Gate Farm, LLC to plaintiff Larry Antonini. (Rec. Doc. 1-3, Exh. C, Horse Bill of Sale). Blue Gate, which is located in Wisconsin, specializes in selling top show jumpers around the country. Plaintiffs, Lawrence and Mary Antonini, are Louisiana residents.

On December 27, 2011, Larry Antonini contacted defendant Denise Wilson regarding a horse named Casey Jones, whose specs

1

appeared on Blue Gate's website. Wilson's family owns Blue Gate Farm and Wilson's contact information was provided on the website. Antonini explained that he had been riding show horses for a relatively short period of time and would therefore "need a horse who can take some mistakes." (Rec. Doc. 1-1, Exh. A, Email from Antonini to Wilson). Wilson responded to the email by providing information about Casey Jones. (Id.) Wilson stated that she had a few other horses that might interest Antonini, although those horses are not mentioned by name. (Id.). Wilson advised that Antonini was free to come visit at Blue Gate's stables in Ocala, Florida, which is where the horses were located. (Id.).

Antonini responded by reiterating that he was interested in Casey Jones and that he would require a "tolerant horse." Wilson provided her cell phone number so that Antonini and his trainer, Rick Harris, could arrange to travel to Florida to inspect the horses. (Id.). Later the same afternoon Wilson emailed Antonini information on Casey Jones and three other horses (including Cavalier Z) that she thought would interest Antonini. (Rec. Doc. 1-2, Exh. B, Email from Wilson to Antonini). According to Harris, he then had several phone conversations with Wilson while he was in Louisiana and she was in Florida regarding Blue Gate's offerings and Antonini's specific needs. (Rec. Doc. 15-3, Exh. C, Harris affidavit).

Larry Antonini and Rick Harris traveled to Blue Gate's stables in Florida to view the horses. After trying several horses over a two-day period, Antonini decided that he liked Cavalier. Antonini contends that Wilson orally misrepresented several important aspects of Cavalier's show history, prior ownership, and temperament to both him and Harris while they were in Florida. Antonini contends that he and Harris specifically asked Wilson whether Cavalier exhibited a certain equine behavioral vice called "cribbing," but that she denied that Cavalier had ever exhibited such behavior.[1]

The parties agreed to a purchase price of $155,000. The Antoninis wired the purchase funds from their bank in Orleans Parish to defendant Blue Gate Farm. (Rec. Doc. 1, Complaint ¶¶ VVI, XVII). Blue Gate Farm later transmitted via Federal Express the Horse Bill of Sale to the Antoninis here in Louisiana where they signed the agreement and returned it to Wilson in Florida for her signature. (Id. ¶ XVII). Cavalier Z was then delivered to Harris in Pensacola, Florida, where he was attending a horse show. Harris brought Cavalier Z to New Orleans shortly thereafter. (Id. ¶ XVIII).

Plaintiffs contend that Cavalier started to exhibit signs of cribbing almost immediately. (Rec. Doc. 1, Complaint ¶¶ XVIII,

---

[1] "Cribbing" is a behavioral vice in which a horse holds on to a fixed object with its teeth and sucks in and swallows air. (Rec. Doc. 1, Complaint at 5 n.14).

XIX).  Antonini also found the horse to be far less tolerant than what Wilson had represented.  (Id. ¶ XXI).  According to Plaintiffs, Cavalier just became progressively worse so they contacted Wilson about rescinding the sale.  Wilson refused but was willing to exchange another horse for Cavalier plus an additional payment.  (Rec. Doc. 1-1, Complaint ¶ XXIII).  The Antoninis ultimately brought this suit against Wilson and Blue Gate Farm alleging numerous causes of action under both Florida and Louisiana law.  The sales contract itself is governed by Wisconsin law.  (Rec. Doc. 1-1, Complaint Exh. C).

Defendants now move to dismiss the complaint for lack of personal jurisdiction and improper venue.  Defendants argue that there is no factual basis for this Court to exercise either specific or general personal jurisdiction over them.  They point out that this case involves a contract that was negotiated and finalized in Florida, and which by its express terms is governed by Wisconsin law.  Alternatively, Defendants argue that venue is not proper in this district.

## II. Discussion

Plaintiffs have clarified in their opposition that they are relying on *specific* personal jurisdiction, not general jurisdiction.  (Rec. Doc. 15, Opposition at 8).  The Court therefore limits its consideration to *specific* jurisdiction.

A federal court sitting in diversity must satisfy two

4

requirements to exercise personal jurisdiction over a nonresident defendant.  Pervasive Software, Inc. v. Lexware GMBH & Co. KG, 688 F.3d 214, 220 (5th Cir. 2012).  First, the forum state's long-arm statute must confer personal jurisdiction.  Second, the exercise of jurisdiction must not exceed the boundaries of the Due Process Clause of the Fourteenth Amendment.  Id. (citing Mink v. AAAA Dev. LLC, 190 F.3d 333, 335 (5th Cir. 1999)).  The limits of the Louisiana long-arm statute are coextensive with constitutional due process limits.  Jackson v. Tanfoglio Giuseppe, SRL, 615 F.3d 579, 584 (5th Cir. 2010) (citing Walk Haydel & Assocs. v. Coastal Power Prod. Co., 517 F.3d 235, 242-43 (5th Cir. 2008)).  Therefore, the inquiry is whether jurisdiction comports with federal constitutional guarantees.  Id.

Specific jurisdiction requires a plaintiff to show that 1) there are sufficient, i.e., not random, fortuitous, or attenuated, pre-litigation connections between the non-resident defendant and the forum; 2) the connection has been purposefully established by the defendant; and, 3) the plaintiff's cause of action arises out of or is related to the defendant's forum contacts.  Pervasive Software, 688 F.3d at 221.  It is now well-settled that an individual's contract with an out-of-state party alone cannot automatically establish sufficient minimum contacts in the other party's home forum.  Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985)).  The "minimum contacts"

5

inquiry is fact intensive and no one element is decisive. McFadin v. Gerber, 587 F.3d 753, 759 (5th Cir. 2009). The touchstone is whether the defendant's conduct shows that he could "reasonably anticipate being haled into court." Id. (quoting Luv N' Care, Ltd. v. Insta-Mix, Inc., 438 F.3d 469, 470 (5th Cir. 2006)). The defendant must not be "haled into a jurisdiction solely as a result of 'random, fortuitous, or attenuated' contacts, or of the 'unilateral activity of another party or third person.'" Id. (quoting Electrosource, Inc. v. Horizon Battery Techs., Ltd., 176 F.3d 867, 871-72 (5th Cir. 1999)). At this stage the plaintiff need only establish a prima facie case of personal jurisdiction. See Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co., 517 F.3d 235, 241 (5th Cir. 2008).

Turning now to the Antoninis' case, Plaintiffs have established the following purposeful contacts between Defendants and the State of Louisiana: On December 28, 2011, Wilson answered Antonini's email inquiry about Blue Gate's offerings, and in particular Casey Jones. Wilson followed up with two other emails on the same date, one which was a reply providing her cell phone number to Antonini, and another email that contained a brief description of four horses, including Casey Jones and Cavalier Z. Harris and Wilson had phone conversations prior to the Florida trip. Plaintiffs wired their payment for Cavalier Z from their bank in Louisiana and Wilson mailed the sales contract

6

to Louisiana for signature.

These contacts are insufficient to support a prima facie case of specific personal jurisdiction. It is important to remain mindful that communications merely related to the formation of a contract or sale are typically not sufficient to support specific jurisdiction. Rather, the cause of action must in some way arise out of those communications, which is not the case here.

Nothing about the minimal preliminary email communications that occurred suggests that any fraudulent information was transmitted that ultimately led to the injury involved.[2] As for the phone conversations, Harris's affidavit does not suggest that Wilson reached out to him to initiate these phone conversations, but even if she did, there is no suggestion that Wilson made specific misrepresentations to Harris about Cavalier on the phone while Harris was in Louisiana. In other words, the Court can

---

[2] In the December 28, 2011, email that contained information on several horses, Cavalier's information contains the following statement: "Successful record in the international 1.40/1.45m classes with an Amateur in Europe – definite 1.50m GP horse." (Rec. Doc. 1-2, Exh. B, Email from Wilson to Antonini). The Court recognizes that one of Plaintiffs' contentions is that Wilson misrepresented Cavalier's show history, and that Antonini decided to buy Cavalier in large part because of the horse's show history. But there is no allegation that this single statement is false or misleading, even if Plaintiffs were to disagree with it. Moreover, the record suggests that the misrepresentations regarding Cavalier's show history occurred during the two day onsite visit in Florida, and that these were the representations that led to the purchase decision.

discern nothing tortious about Wilson's pre-Florida communications with Louisiana.  The emails and phone conversations that led to the Florida trip are the type of communications that are exchanged in the course of developing a contract and those communications typically do not support a finding of jurisdiction.  See Moncrief Oil Int'l, Inc. v. OAO Gazprom, 481 F.3d 309, 312 (5th Cir. 2007).  Under the law in this circuit, Plaintiffs' cause of action would have to arise out of the tortious nature of these communications in order to have them support a finding of jurisdiction but that is simply not the case here.

   The allegedly misleading and tortious conversations that Wilson, Antonini, and Harris had regarding Cavalier occurred while Harris and Antonini were in Florida inspecting the horses. It was after going to Florida to view and test several horses that Antonini decided to purchase Cavalier.  In fact, the email trail leading up to the Florida trip suggests that Antonini had primarily been interested in Casey Jones prior to visiting the farm.  All of the negotiations, horse trials, and allegedly fraudulent representations regarding Cavalier occurred in Florida.  Antonini's and Harris's affidavits specifically detail the allegedly false representations that Wilson made about Cavalier and those representations were made in Florida. (Antonini affidavit ¶¶ 11-15; Harris affidavit ¶¶ 7-11).  All of

the pre-sale veterinary inspections that Plaintiffs commissioned occurred in Florida and Antonini took delivery of Cavalier in Florida. (Complaint ¶ 18).

Plaintiffs did wire their payment from a Louisiana bank but that does not constitute purposeful conduct by Wilson directed at Louisiana. Plaintiffs' own activities in performing their side of the transaction in Louisiana cannot be imputed to Wilson for purposes of the specific jurisdiction analysis. See Moncrief Oil, 481 F.3d at 312. Again, the focus must remain on Wilson's activities as directed at Louisiana.

Wilson did mail the sales contract to Louisiana for signature, and Plaintiffs contend that this particular communication was tortious in nature because in the contract Wilson represented that Blue Gate Farm was Cavalier's owner at the time of the sale when in fact that was not true. According to Plaintiffs, this was a violation of Florida law and they have pled a specific cause of action for a violation of this law.

The Court recognizes that even a single contact with the forum can give rise to specific jurisdiction when the cause of action arises out of that contact. See Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 211 (5th Cir. 1999). But in this circuit specific personal jurisdiction is a claim-specific inquiry. McFadin, 587 F.3d at 759. In other words, a plaintiff bringing multiple claims that arise out of different forum contacts of the

defendant must establish specific jurisdiction for *each* claim. Id. (quoting Seiferth v. Heliocopteros Atuneros, Inc., 472 F.3d 266 (5th Cir. 2006)).  None of Plaintiffs' Louisiana causes of action, which comprise the majority of the complaint, arise out of the ownership representation.  Plaintiffs do not contend that Blue Gate did not transfer good title to the horse or that they relied on any representations about ownership when deciding to purchase the horse.  The ownership representation did not cause the injury that Plaintiffs are alleging in the Louisiana causes of action.

    The allegedly tortious representation as to true ownership pertains to Plaintiffs' cause of action under Florida law.  The State of Florida has a specific statutory prohibition pertaining to the sale of horses that makes it unlawful for a seller to conceal the identity of the horse's true owner.  But the Court is persuaded that the act of mailing the contract to Louisiana for Plaintiffs' signature is not sufficient to support a finding of specific jurisdiction with respect to the Florida causes of action.  Even if Defendants knowingly violated Florida's equine law as to the ownership issue,[3] Defendants could not reasonably anticipate being haled into a Louisiana court to answer for such

---

[3] This Court is not suggesting that Wilson did in fact violate the law.

a violation.[4]

    Plaintiffs contend that the appropriate analysis for measuring specific jurisdiction lies in Calder v. Jones, 465 U.S. 783 (1984), and the Fifth Circuit cases applying it--cases that involve intentional torts that occur outside of the forum yet cause injury inside the forum.  See Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co., 517 F.3d 235 (5th Cir.2008); Wien Air, 195 F.3d at 208; Guidry v. United States Tobacco Co., 188 F.3d 619 (5th Cir. 1999).  Plaintiffs' reliance on this approach to specific jurisdiction is misplaced because the tortious misrepresentations that are alleged to have caused injury in this state were not directed at this state as was the case in the foregoing cases.  The "effects" or injury associated with the tortious misrepresentations were experienced in Louisiana because Plaintiffs reside in Louisiana.  But the tortious misrepresentations that caused injury to Plaintiffs occurred in Florida.  Any tortious conduct by Defendants was not directed at the State of Louisiana.  The "effects" jurisdiction that Plaintiffs are urging is somewhat rare and not expansive. McFadin, 587 F.3d at 762; Moncrief Oil, 481 F.3d at 314.

    In sum, Plaintiffs have not established a prima face case of specific personal jurisdiction.

---

[4] Even if Plaintiffs could clear the hurdle of personal jurisdiction as to the Florida causes of action, venue would not be proper in this district.

11

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Dismiss for Improper Venue (Rec. Doc. 12)** filed by defendants Blue Gate Farm, LLC and Denise Wilson is **GRANTED**.  Plaintiffs' complaint is **DISMISSED** without prejudice for lack of personal jurisdiction.

December 18, 2012

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE